**In re Sarah STERN, Debtor.**

**No. 00–20639 (ASH).**

United States Bankruptcy Court,
S.D. New York.

Oct. 19, 2001.

## MEMORANDUM DECISION ON SANCTIONS FOR SHAM INVOLUNTARY FILING

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

An involuntary petition which is not duly served upon the alleged debtor raises twin specters of collusion and oppression. When a Bankruptcy Court suspects an involuntary filing is a sham or is collusive, the Court may make proper inquiry into the circumstances of the filing. *F.D.I.C. v. Cortez*, 96 F.3d 50 (2d Cir.1996). This Court has made such inquiries on two recent occasions. After a hearing in *In re Judah Grossinger*, 268 B.R. 386 (Bankr. S.D.N.Y.2001), the Court ruled that it would sanction the petitioning creditor and his attorney for filing an involuntary Chapter 11 petition in bad faith. The reasons for assessing that sanction are set forth in the decision in *Grossinger*, which is incorporated herein by reference.

A hearing in this case was held to determine whether petitioning creditors Yeshiva Chofetz Chaim, Hershy Itzkowitz and Beatrice Waldman (collectively "Petitioning Creditors") should be sanctioned for filing this involuntary Chapter 11 petition in bad faith. Unlike *Grossinger*, the petition here appears to have the requisite number of creditors, and the purported claims asserted exceed the statutory minimum required by 11 U.S.C. § 303. However, sanctions are assessed against the Petitioning Creditors in this case because their actual conduct contradicts the proffered good-faith purpose for the filing.

### Background

Prior to the instant petition, another involuntary Chapter 11 petition was filed against Stern in this Court on March 16, 2000 by petitioning creditors Mendel Kirsh, Berl Shakovin and Ephrim Garfinkle. Stern was never served with a copy of the involuntary petition, and the petitioning creditors took no further activity in the case. A secured creditor of Stern by virtue of a mortgage on Stern's residence at 91A West Carlton Road, Suffern, New York, moved for relief from the automatic stay in order to proceed with a foreclosure sale on the residence. The automatic stay was lifted by an order dated September

26, 2000, and the petition was dismissed for failure to prosecute on the same day. Stern stated that she never received notice of the March 16, 2000 filing against her.

The present two-page involuntary Chapter 11 petition was filed against Stern on November 13, 2000. In the section of the petition in which the Petitioning Creditors are required to provide information as to the nature of their claim, Yeshiva Chofetz Chaim stated "judgment" and listed the amount of the claim as "prox. $200,000.00"; Hershy Itzkowitz stated "loan" "prox. $3,000.00"; and Beatrice Waldman stated "Loans" "prox. $20,000." The Petitioning Creditors provided no other information as to the nature of their claims against Stern.

The docket sheet reflects that no further action was taken on this involuntary petition by anyone until January 9, 2001, when application for relief from the automatic stay was again made by the mortgagee on Stern's residence. Beatrice Waldman opposed the application and requested an opportunity "to be heard on the matter and buy the subject property," which caused a hearing to be scheduled (the "Lift–Stay Hearing"). Waldman did not appear at the Lift–Stay Hearing. However, Hershy Itzkowitz appeared pro se and one Aryeh Zaks appeared on behalf of Yeshiva Chofetz Chaim in order to oppose the lifting of the automatic stay.[1]

At the Lift–Stay Hearing the Court found that ample cause existed for lifting the automatic stay. This was not contested by Zaks or Itzkowitz. Instead, Zaks stated that the Chapter 11 petition was filed for the purpose of stalling the mortgagee bank's foreclosure sale on Stern's residence so that the petitioning creditors could purchase the residence. The Court granted the mortgagee bank's application for relief from the automatic stay.

Stern did not oppose the motion to lift the automatic stay or appear at the Lift–Stay Hearing. At that time, no affidavit of service of the summons on Stern was listed on the docket, and Stern later stated that she did not recall ever receiving a summons.

In light of the Petitioning Creditors' dubious motive for filing the petition and failure to serve the petition on Stern, the Court issued an order to show cause why, inter alia, the Petitioning Creditors should not be sanctioned for a bad-faith filing under 11 U.S.C. § 303(I)(2)(B). Stern and each of the Petitioning Creditors appeared at the hearing on the order to show cause (the "Sanctions Hearing").[2]

At the Sanctions Hearing the Petitioning Creditors submitted an "Affidavit of service by Mail" signed by Eliot S. Berney and dated February 19, 2001. The affidavit had not been previously filed with the Court. According to the affidavit, Berney served the summons on Stern on November 14, 2000. The date of the affidavit of service more than three months after the fact is suspicious in itself. Its credibility is further suspect because it is dated subsequent to the Lift–Stay Hearing at which Zaks stated forcefully that an affidavit of service had already been prepared and filed:

---

**1.** At the Sanctions Hearing, referred to below, Zaks asserted that the Yeshiva's $200,000 claim was purchased from a former attorney of the Sterns for $75,000. Zaks is not an attorney, but as noted below, he had prior experience with at least one involuntary bankruptcy filing.

**2.** The Petitioning Creditors were represented at the Sanctions Hearing by Barry R. Feerst, who represented the alleged debtor Highgate Equities in one of the involuntary proceedings filed by Zaks and Yeshiva Chofetz Chaim in the Eastern District of New York, referred to below.

THE COURT: You have never served the debtor.

MR. ZAKS: She was served, I believe, Your Honor.

THE COURT: It is not reflected anywhere.

MR. ZAKS: I'm sorry. I believe it was.

THE COURT: Show me.

MR. ZAKS: I don't have the papers here but I believe there was an affidavit of service.

Zaks later stated: "I believe I have a copy of the service. If the Court wants I will try to forward it to the Court."

At the Sanctions Hearing, Zaks was questioned about the Berney affidavit of service. (Berney himself was not produced in court by Zaks.) Zaks testified that he asked Berney to send a copy of the summons and Chapter 11 petition to the debtor and prepare the affidavit. When asked by the Court whether he also asked Berney to file the affidavit of service, Zaks first stated "No, I don't believe—I don't recall what I did then" but later stated that he did tell Berney to file the affidavit. In either event, Zaks could not recall whether he took any steps to ascertain whether Berney had complied with his instructions.

This is not the first time that Zaks and Yeshiva Chofetz Chaim have filed involuntary Chapter 11 petitions. They filed two involuntary Chapter 11 petitions in the Eastern District of New York (Hon. Melanie Cyganowski, B.J.) on June 11, 1998 and August 20, 1999 respectively. Both petitions were dismissed with prejudice for failure to prosecute. In each case, the Court issued an order directing the petitioning creditors to appear and show cause why the case should not be dismissed. On September 28, 1999, in response to the Court's order to show cause in the second case, Zaks submitted a letter in which he stated:

I have received an order to show cause to dismiss this case for lack of service, although I believe that a copy of the affidavit of service was forwarded to the court in the past, We hereby enclose another copy for the court record.

\* \* \*

I intend to hire an attorney to deal with this chapter 11 case, so that all the needed documentation is produced in a timely manner and that all court procedures are followed correctly[.]

None of the petitioning creditors appeared in response to either order to show cause issued by the Bankruptcy Court for the Eastern District of New York, and upon dismissal of the second petition, Judge Cyganowski enjoined the petitioning creditors, including Zaks and Yeshiva Chofetz Chaim, from filing further involuntary petitions for one year.

### Discussion

 In a joint affirmation submitted at the Sanctions Hearing, the Petitioning Creditors stated that the involuntary petition was filed to prevent a foreclosure sale by Stern's mortgagee because the Petitioning Creditors believed that their claims would not be paid by the proceeds of the foreclosure sale. It may be proper for unsecured creditors to seek to prevent a mortgage foreclosure on the debtor's sole asset where the foreclosure sale would wipe out equity that could repay unsecured creditors. In such a case, petitioning creditors acting in good faith would do what was necessary to prosecute the case and obtain the appointment of a Chapter 7 Trustee to obtain an appraisal and, if appropriate, oppose the foreclosure sale and seek to sell the asset in an orderly fashion.

The Petitioning Creditors in this case did not do that.

Although the petitioning creditors did not know the value of the Stern residence, Zaks stated at the Lift–Stay Hearing that "I would love to buy it for the price that the bank says and somehow get our money out." If the Petitioning Creditors' goal was to purchase the Stern residence, they did not need to file an involuntary petition against Stern. The Petitioning Creditors could have appeared at the foreclosure sale and purchased the Stern residence. Instead, they filed this involuntary Chapter 11 against Stern, which was calculated to frustrate the mortgagee bank, with the hope of extracting a deal or concession. Zaks stated: "I didn't want the foreclosure shouldn't go through in order we should have a chance to get some of our own money that we're owed."

The testimony by Zaks under oath at the Sanctions Hearing revealed that no serious attempts at communication with the mortgagee bank ever took place:

> THE COURT: With regard to your stated objective of getting a better deal with the bank. I still don't understand what you were trying to accomplish, but what did you do to try to accomplish whatever it was?
>
> THE WITNESS: We did have people to try to contact the bank and perhaps see what the bank really wanted as a settlement offer or perhaps they should agree to sell it in a different fashion or whatever should be done to try to be helpful. I don't recall exactly what—
>
> THE COURT: Did you contact the bank?
>
> THE WITNESS: No. I believe my brother may have reached out or somebody else at the school, but I remember somebody did reach out to somebody at the bank. There was a little bit of difficulty—

The Petitioning Creditors have utterly failed in their obligation to move forward in the involuntary proceeding they filed. In spite of his acknowledgment at the Sanctions Hearing that filing an involuntary bankruptcy petition is a very serious act, Zaks delegated the two most vital steps—service of the summons on the debtor and negotiation with the secured creditor—to apparently unreliable persons who were not monitored. It must be concluded that the other two petitioning creditors were complicit in this inactivity and inattention. Neither Itzkowitz nor Waldman offered evidence that they had taken any act at all in the bankruptcy.

Zaks and Yeshiva Chofetz Chaim have once again failed to prosecute an involuntary petition. Although Zaks, as evidenced by his September 28, 1999 letter to Judge Cyganowski, was well aware of the obligations of a petitioning creditor, he again failed to prosecute the involuntary petition in a timely manner or hire an attorney who would do so. In each of the three involuntary filings initiated by them, Zaks and Yeshiva Chofetz Chaim have (1) failed to take any action to advance the petition and (2) failed to serve a summons on the alleged debtor (reflected by the filing of an affidavit of service with the Court) until after the Court issued an order to show cause why the case should not be dismissed.

The purported purpose for filing the involuntary petition is undermined by the Petitioning Creditors' failure to serve a copy of the involuntary petition upon Stern and failure to prosecute the case. Such inactivity gives rise to a powerful inference of bad faith. This inference, and the fact that this is an established pattern of conduct by Zaks and Yeshiva Chofetz Chaim, manifests the bad faith in filing the instant involuntary petition.

Finally, Zaks' statements that the Petitioning Creditors did not know the value of

Stern's home, but wanted to prevent the foreclosure to "see what the bank really wanted as a settlement offer" tend to show that the Petitioning Creditors did not file this petition to preserve equity but rather to harass and delay the mortgagee bank.

Upon the facts of this case, in view of the governing law discussed at length in *In re Grossinger*, sanctions are warranted against each of the Petitioning Creditors, and the sanction shall be payable to the Clerk of the Bankruptcy Court. Sanctions are assessed, and the decision here and in *In re Grossinger* are published, to give notice to the bar and future petitioning creditors that sham involuntary petitions may not be filed in this court without consequences.